**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARPENTERS PENSION TRUST FUND FOR NORTHERN CALIFORNIA, et al. | Case No. 10-0812 SC |
| Plaintiffs, | ORDER GRANTING MOTION FOR <u>SUMMARY JUDGMENT</u> |
| v. | |
| M.A. LINDQUIST CO., INC., a California Corporation, | |
| Defendant. | |

## I.   <u>INTRODUCTION</u>

Before the Court is a Motion for Summary Judgment or in the Alternative for Default Judgment, brought by Plaintiffs Board of Trustees of the Carpenters Pension Trust Fund for Northern California, et al. ("Pension Fund" or "Plaintiffs"), against Defendant M.A. Lindquist Co., Inc. ("M.A. Lindquist Co." or "Defendant").  ECF No. 29 ("Mot.").  Defendant did not file an Opposition to the Motion.  Having considered the papers submitted, the Court concludes that entry of Summary Judgment against Defendant is appropriate, and GRANTS Summary Judgment in favor of Plaintiffs.

///

**II.   BACKGROUND**

    **A.   Factual Background**

    Defendant admits that it was a participating employer in the Pension Fund.  McDonough Decl., Ex. A ("Def.'s Admis.").[1]  As such, Defendant was obligated to make contributions to fund benefits for employees under the Pension Fund pursuant to a collective bargaining agreement with the Carpenters 46 Northern California Counties Conference Board of the United Brotherhood of Carpenters and Joiners of America, the Agreement and Declaration of Trust of the Pension Fund, and Section 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1145.  Price Decl. ¶ 5.[2]

    On or about April 1, 2006, Defendant withdrew from the Pension Fund.  Price Decl. ¶ 6.  Upon Defendant's withdrawal, the Board of Trustees of the Pension Fund calculated Defendant's withdrawal liability to be $954,508.  Id. ¶ 7.  The Pension Fund's administrator, Gene Price, has provided sworn testimony that $954,508 is the correct amount of Defendant's withdrawal liability.  Id. ¶¶ 7, 17.  On or about August 1, 2006, the Pension Fund sent Defendant a Notice of Withdrawal Liability informing Defendant it owed the Pension Fund $954,508.  Price Decl., Ex. A ("Aug. 1, 2006 Notice").  Plaintiffs received no payment and sent Defendant a follow-up letter on August 10, 2006.  Id., Ex. B ("Aug. 10, 2006 Letter").  On October 5, Plaintiffs sent Defendant a letter informing it that if an installment payment of $11,816 was not

_____

[1] Katherine McDonough ("McDonough"), attorney for Plaintiffs, filed a declaration in support of the Motion.  ECF No. 29-3.

[2] Gene Price ("Price"), Administrator of the Carpenters Pension Trust Fund, filed a declaration in support of the Motion.  ECF No. 29-1.

United States District Court
For the Northern District of California

received within sixty days the Pension Fund would require immediate payment of the entire withdrawal liability amount. Id., Ex. C ("Oct. 5, 2006 Letter").  The letter was returned as undeliverable. Id.  On November 13, 2006, Plaintiffs' agent hand delivered the August 1, 2006 Notice and the October 5, 2006 Letter to Defendant. Id. ¶ 12.  Defendant admits that it received the withdrawal liability demand.  Def.'s Admis. ¶ 2.  To date, Plaintiffs have not received a withdrawal liability payment from Defendant.  Price Decl. ¶ 13.

Defendant did not submit a request for review of its withdrawal liability to the Pension Fund or initiate arbitration proceedings regarding the assessment of its withdrawal liability. Price Decl. ¶¶ 14-15; Def.'s Admis. ¶¶ 3-4.

**B.  Procedural Background**

Plaintiffs filed this action February 26, 2010 under ERISA sections 502(g)(2) and 4301.  ECF No. 1 ("Compl.").  Defendant answered on April 21, 2010.  ECF No. 4 ("Answer").

On May 21, 2010, Defendant's counsel Roland G. Simpson ("Simpson") filed a Motion to Withdraw as Attorney.  ECF No. 7 ("Mot. to Withdraw").  On June 16, 2010, this Court granted Simpson's Motion to Withdraw on the condition that Simpson continue to accept service of papers for forwarding purposes until Defendant obtained new counsel.  ECF No. 15.  On September 30, 2010, Simpson filed a motion to discontinue acceptance of papers for Defendant. ECF No. 21.  This Court granted that motion on November 3, 2010. ECF No. 24.  To date, Defendant has not retained new counsel despite the fact that Civil Local Rule 3-9 provides that

United States District Court
For the Northern District of California

3

corporations "may only appear through a member of the bar of this Court."

III. **LEGAL STANDARD**

    A. **Summary Judgment**

    Entry of summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment should be granted if the evidence would require a directed verdict for the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).  Thus, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.

IV. **Discussion**

    A. **Statutory Framework**

    Pension plans are federally regulated pursuant to ERISA, 29 U.S.C. § 1001 et seq.  The Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381-1453, amended ERISA to allow plans to impose proportional liability on withdrawing employers for the unfunded vested benefit obligations of multiemployer plans.  Carpenters Pension Trust Fund v. Underground

**United States District Court**
For the Northern District of California

4

United States District Court
For the Northern District of California

1  <u>Constr. Co., Inc.</u>, 31 F.3d 776, 778 (9th Cir. 1994).  The MPPAA

2  sought to ensure that if a withdrawing employer's past

3  contributions did not fully fund the obligations that had vested at

4  the time of its withdrawal, then the withdrawing employer would

5  have to pay its proportionate share of the deficit.  <u>Id.</u>

6       This system is designed to make employers pay their share of

7  the real cost of pensions by paying a share of the difference

8  between the assets already contributed and the vested benefit

9  liability.  <u>Woodward Sand Co., Inc. v. W. Conf. Teamsters Pension</u>

10 <u>Trust Fund</u>, 789 F.2d 691, 694 (9th Cir. 1986).  When an employer

11 withdraws from a multiemployer pension plan, ERISA requires the

12 withdrawing employer to compensate the pension plan for benefits

13 that have already vested with the employees at the time of the

14 employer's withdrawal.  <u>Id.</u>  This "withdrawal liability" is

15 assessed against the employer to ensure that employees and their

16 beneficiaries are not deprived of anticipated retirement benefits

17 by the termination of pension plans before sufficient funds have

18 been accumulated in the plans.  <u>Id.</u>

19      Withdrawal occurs when an employer permanently ceases to have

20 an obligation to contribute under the plan. 29 U.S.C. § 1383(a).

21 Congress has established the procedure and methods for computing

22 and assessing the amount of liability of a withdrawing employer.

23 Under 29 U.S.C. § 1399, the amount of withdrawal liability is first

24 computed by the pension plan's sponsor and the employer is then

25 notified of the amount and the schedule of payments to be made. The

26 employer is then entitled, within 90 days of such notice, to ask

27 the sponsor to review any specific matter relating to the

28

**United States District Court**
For the Northern District of California

determination of the employer's withdrawal liability. 29 U.S.C. § 1399(c). "Any dispute" between an employer and the plan sponsor relating to the employer's withdrawal liability "shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1). Arbitration may be initiated "within a 60-day period" after the employer is notified of the sponsor's final determination concerning withdrawal liability (or 120 days after the employer requested the sponsor to review the matter, whichever date is earlier). 29 U.S.C. § 1401(a)(1). If arbitration proceedings are not initiated within the time periods prescribed by the statute, "the amounts demanded by the plan sponsor . . . shall be due and owing on the schedule set forth by the plan sponsor." 29 U.S.C. § 1401(b)(1). If the employer fails to make payment when due, and fails to cure the delinquency within 60 days of notice of the delinquency, the plan sponsor is entitled to obtain immediate payment of the entire amount of the employer's outstanding withdrawal liability. 29 U.S.C. § 1399(c)(5).

Under the above statutory framework, a pension fund need only establish three elements to be entitled to judgment on a collection claim for withdrawal liability: (1) that the defendant is an "employer" under the MPPAA; (2) that the pension fund notified the defendant of its withdrawal liability as required by the MPPAA; and (3) that the defendant failed to timely initiate arbitration. See Bd. Of Trs. Of Trucking Employees of N. Jersey Welfare Fund v. Canny, 900 F. Supp. 583, 592 (N.D.N.Y. 1995).

**B.  Undisputed Facts**

United States District Court
For the Northern District of California

1     Here, there is no disputed issue of fact with regard to any of

2  the three elements Plaintiffs must prove to prevail in this action

3  for delinquent withdrawal liability.  First, Defendant admits that

4  it was an employer under the MPPAA.  Def.'s Admis. ¶ 1.  Second,

5  Defendant admits that it received the withdrawal liability notice

6  and demand for payment from Plaintiff.  Id. ¶ 2.  And third,

7  Defendant admits that it did not initiate arbitration.  Id. ¶ 3.

8  Accordingly, there is no disputed issue of material fact as to

9  Defendant's liability, and Plaintiffs are entitled to summary

10  judgment.

11     **C.  Remedy**

12     ERISA provides that "[i]n any action under this section to

13  compel an employer to pay withdrawal liability, any failure of the

14  employer to make any withdrawal liability payment within the time

15  prescribed shall be treated in the same manner as a delinquent

16  contribution . . . ."  29 U.S.C. § 1451(b).  In an action to

17  enforce payment of delinquent contributions, a plaintiff is

18  entitled to recover the unpaid contributions, interest, liquidated

19  damages, and reasonable attorneys' fees and costs.  29 U.S.C. §

20  1132(g)(2).  See also Operating Eng'rs Pension Trust Fund v.

21  Clarke's Welding, Inc., 688 F. Supp. 2d 902, 914 (N.D. Cal. 2010).

22     1.  Interest

23     ERISA Section 502(g)(2)(B) provides that interest on unpaid

24  contributions shall be determined based on the rate provided under

25  the plan, or, if none, the rate prescribed under section 6621 of

26  the Internal Revenue Code.  29 U.S.C. § 1132(g)(2)(B).  Here, the

27  statutory interest rate is 10 percent per year.  Price Decl. ¶ 17.

28

Plaintiff has calculated the total interest owed from August 1, 2006, the date Defendant was first notified of its withdrawal liability, through November 30, 2010 to be $397,755.25 and has explained the basis for this calculation to the Court's satisfaction.  Price Decl. ¶ 17.

    2.  <u>Liquidated Damages</u>

ERISA section 502(g)(2)(C) authorizes a liquidated damages award pursuant to the terms of the pension plan in an amount not in excess of 20 percent of the total withdrawal liability.  29 U.S.C. § 1132(g)(2)(C)(ii).  Here, the pension plan provided that "the amount of damage to the Fund and the Pension Plan resulting from any failure to promptly pay shall be presumed to be the sum of $20.00 per delinquency or 10% of the amount of the Contribution or Contributions due, whichever is greater."  Price Decl. ¶ 16. Accordingly, Plaintiffs seek a liquidated damages amount equal to 10 percent of the total withdrawal liability amount of $954,508. Plaintiffs therefore request $95,450.80 in liquidated damages.

    3.  <u>Attorneys' Fees and Costs</u>

ERISA section 502(g)(2)(D) entitles Plaintiffs to an award of reasonable attorneys' fees and costs.  29 U.S.C. § 1132(g)(2)(D). Plaintiffs have not provided a statement of attorneys' fees and costs but assert that they will move for fees and costs if judgment is awarded in their favor.  Mot. at 11.

///
///
///
///

United States District Court
For the Northern District of California

1   ///

2   ///

3   ///

4   ///

5   ///

6   ///

7   **V.**   **CONCLUSION**

8        The Court GRANTS the Motion for Summary Judgment filed by

9   Plaintiffs Board of Trustees of the Carpenters Pension Trust Fund

10  for Northern California and against Defendant M.A. Lindquist, Co.,

11  Inc., in the amount of $954,508.00 in unpaid principal withdrawal

12  liability, $397,755.25 in interest, and $95,450.80 in liquidated

13  damages.  Plaintiffs' total recovery will be $1,447,714.05.  Within

14  thirty (30) days of this Order, Plaintiffs shall file a motion for

15  attorneys' fees and costs.

16

17       IT IS SO ORDERED.

18

19       Dated: February 8, 2011

20                                        UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California